STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-566 consolidated with 08-567

ANNA PLAISANCE

VERSUS

ALLSTATE INSURANCE COMPANY, ET AL.

**********
APPEAL FROM THE
LAKE CHARLES CITY COURT
PARISH OF CALCASIEU, NO. 05-2189 C/W 05-2190
HONORABLE JOHN S. HOOD, CITY COURT JUDGE

**********
**ELIZABETH A. PICKETT**
**JUDGE**
**********

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and J. David Painter, Judges.

**AFFIRMED AS AMENDED.**

Peters, J., concurs in the result.

**Clifford L. Newman**
**The Newman Law Firm**
**1925 Enterprise Blvd.**
**Lake Charles, LA 70601**
**Counsel for Plaintiff/Appellee:**
**Anna Plaisance**

**Mesonie Terrence Halley Jr.**
**Law Offices of Harold G. Toscano**
**One Lakeshore Dr., Suite 1710**
**Lake Charles, LA 70626**
**Counsel for Defendants/Appellants:**
**Allstate Insurance Company and**
**Sally C. Daigle**

**Pickett, J.**

These two consolidated cases arise out of a rear-end collision on Lake Street in Lake Charles on October 20, 2004. In this case, number 08-566, Anna Plaisance, the guest passenger in the lead vehicle, sued Sally C. Daigle, the driver of the following vehicle, and her insurer, Allstate Insurance Company (Allstate). In case number 08-567, James C. Gribble, the driver of the lead vehicle, also sued Daigle and her insurer, Allstate. The trial court found Gribble 75% at fault in the accident and Daigle 25% at fault. The trial court awarded Gribble $2,576.55 in property damages, $2,637.92 in medicals, $2,257.50 in lost wages, and $5,000.00 for pain and suffering. Each award to Gribble was reduced by 75%, the percentage of Gribble's fault in the accident. Ms. Plaisance was awarded $2,548.44 in medicals and $3,500.00 for general damages. Finding that Gribble's percentage of fault could not be imputed to his guest passenger, the court refused to reduce the award to Plaisance. Daigle and Allstate appeal arguing three assignments of error: (1) the trial court erred in not reducing the award to Ms. Plaisance to 25% of the total awarded in accordance with the provisions of La.Civ.Code arts. 2323 and 2324; (2) the trial court erred in making an award to Gribble for property damages in that Gribble admitted he had already been paid these damages; and (3) the trial court erred in awarding Gribble lost wages inasmuch as he introduced no independent, supporting documentation of this claim. We reduce the award to Ms. Plaisance by 75%; we annul the property damage award to Mr. Gribble inasmuch as he admitted under oath at trial that he had already been paid by the defendants for his property damage; and we affirm the award of past lost wages to Mr. Gribble.

2

## FACTS, LAW, and DISCUSSION

The facts in this case are hotly disputed. The plaintiffs claim their version of the events leading up to the collision is correct and the defendant claims that her version of the events is really what took place. The appellate review of such cases is well settled:

> The supreme court set forth the standard of review for an appellate court when considering a factual finding by the trial court in *Rosell v. ESCO*, 549 So.2d 840, 844-845 (La.1989) (citations and footnote omitted):
>
>> It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. In applying the manifestly erroneous--clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo.
>>
>> When findings are based on determinations regarding the credibility of witnesses, the manifest error--clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a

> credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.

*Guilbeaux v. Housing Authority of the City of Opelousas*, 07-1235, p. 3 (La.App. 3 Cir. 3/5/08), 978 So.2d 1132, 1135, *writ denied*, 08-717 (La. 5/30/08), 983 So.2d 898.

With the foregoing in mind we adopt the factual findings of the trial court in regards to the causation of the accident, *i.e.*, that after Ms. Daigle entered Lake Street from West School Street, Mr. Gribble passed Ms. Daigle in the left turn lane while traveling at 40-45 mph. Following his passing maneuver, Mr. Gribble moved back into the outside lane of traffic and braked suddenly, causing Ms. Daigle to rear-end his car. It is undisputed that from the intersection of West School and Lake Streets to the spot of the collision is a distance of less than two blocks (the distance between the intersection of West School and Lake to the intersection of Julius and Lake, the closest intersection to the accident, is described by the trial court as "two short ends of blocks").

In accordance with its factual findings, the trial court assigned 75% of fault in the accident to Gribble and 25% to Daigle.

In their first assignment of error, the defendants/appellants argue the trial court erred in not reducing its award to Ms. Plaisance to 25% of her total damages. We agree. The trial court correctly stated that Mr. Gribble's percentage of fault could not be imputed to Ms. Plaisance, his guest passenger. This is a correct statement of the law. However, the reduction in Ms. Plaisance's award is not based upon any imputation of fault but rather upon the legal relationship between the two tortfeasors in the accident. The legal relationship between multiple tortfeasors is set forth in La.

4

C.C. arts. 2323 and 2324. That relationship was ably explained by our colleagues of the first circuit in *Wooley v. Lucksinger*, 06-1167 (La.App. 1 Cir. 5/4/07), 961 So.2d 1228, wherein the court stated as follows:

[Louisiana Civil Code article] 2323 provides as follows:

A. *In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable.* If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.

B. *The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.*

C. Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced. (Emphasis added.)

Louisiana Civil Code article 2324 provides as follows:

A. *He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.*

B. *If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such*

5

*other person's insolvency, ability to pay, degree of fault, immunity by statute or otherwise, including but not limited to immunity as provided in R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable.*

C. Interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors. (Emphasis added.)

In *Dumas v. State, Dep't of Culture, Recreation & Tourism*, 2002-0563 (La.10/15/02), 828 So.2d 530, . . . the Louisiana Supreme Court construed La. C.C. arts. 2323 and 2324 and defined the legal relations of the State and the third party co-obligor hospital as follows:

We find the language of Articles 2323 and 2324(B), as amended by Act 3, is clear, unambiguous, and does not lead to absurd consequences. Article 2323 provides that "[i]n *any action for damages* ..., the degree of percentage of fault of *all persons* causing or contributing to the injury, death or loss *shall* be determined, regardless of whether the person is a party to the action or a nonparty.... The [foregoing] provisions ... *shall* apply to *any claim* ... asserted *under any law or legal doctrine or theory of liability, regardless of the basis of liability*." (Emphasis added.) Thus, this article clearly requires that the fault of every person responsible for a plaintiff's injuries be compared, whether or not they are parties, regardless of the legal theory of liability asserted against each person.

Likewise, the language of Article 2324(B) is equally clear. It provides that in non-intentional cases, liability for damages caused by two or more persons *shall* be a joint and divisible obligation. Each joint tortfeasor *shall not* be liable for more than his degree of fault and *shall not* be solidarily liable with any other person for damages attributable to the fault of that other person. This provision abolishes solidarity among non-intentional tortfeasors, and makes each non-intentional tortfeasor liable only for his own share of the fault, which must be quantified pursuant to Article 2323.

*Wooley*, 961 So.2d at 1242-44.

Since Ms. Daigle's percentage of fault in the accident was set at 25%, she can only be cast with 25% of Ms. Plaisance's damages. Accordingly, we reduce Ms.

Daigle's liability to Ms. Plaisance to 25% of the total damages awarded to Ms. Plaisance.

In their second assignment of error, the defendants argue that the trial court erred in awarding Mr. Gribble property damages in its judgment inasmuch as Mr. Gribble had already been paid for these damages. We agree. In his testimony at trial, Mr. Gribble stated that Allstate had already paid his property damages. Making an award of damages already paid was clear error. Accordingly, we reverse this award.

Finally, the defendants argue that the trial court erred in making an award to Mr. Gribble for past lost wages. They argue that the award was in error in that Mr. Gribble presented no documentation or independent testimony to support his claim and that since the trial court questioned Mr. Gribble's veracity as to the factual circumstances of the accident, it should have rejected his testimony as to past lost wages.

> Under Louisiana jurisprudence, damages for lost wages may be established by any proof which reasonably establishes the claim, including the plaintiff's own reasonable testimony. While claims for past lost wages must be established with some degree of certainty, they need not be proven with mathematical certainty, but only by such proof as reasonably establishes the plaintiff's claim. This award may be supported by the plaintiff's detailed and uncorroborated testimony. *Daniels v. Burridge*, 00-1089 (La.App. 4 Cir. 3/21/01), 785 So.2d 906, *writ denied*, 01-1110 (La.6/1/01), 793 So.2d 201.

*Smith v. Ebey*, 04-889, pp. 6-7 (La.App. 3 Cir. 12/29/04), 896 So.2d 143, 148.

In the case sub judice Mr. Gribble testified that at the time of the accident he was working as a cement truck driver delivering cement for Angelle Concrete and making $10.75 per hour. He stated that he normally worked 60 hours a week, making 40 hours at regular pay and 20 hours at overtime (time and one-half). He explained that his duties required him to climb a ladder on the truck in order to inspect the

consistency of the concrete inside the truck in the "sump." He claimed that pain from the accident made this difficult and that his repeated trips to the chiropractor finally led to his discharge. The record establishes he was under chiropractic care for two months after the accident. He claimed three weeks lost wages. The trial court's award for lost wages reflected exactly three weeks lost wages at 60 hours per week. Even though the trial court questioned Mr. Gribble's veracity as to the circumstances of the accident, it evidently believed him regarding lost wages. We cannot say that this determination was clearly wrong. Accordingly, we affirm the trial court's award of past lost wages.

Therefore, for the reasons set forth above, we affirm the award of past lost wages to Mr. Gribble; we reverse the award of property damages to Mr. Gribble; and we amend the judgment in favor of Ms. Plaisance to reduce the award against Ms. Daigle to 25% of Ms. Plaisance's total damages in accordance with Ms. Daigle's degree of fault in the accident. Each party is to bear his/her own costs of this appeal.

**AFFIRMED AS AMENDED.**